Our first case is 23-1326, PHT Holding v. Security Life of Denver. Mr. Savage, you may proceed. Good morning, Your Honor. May it please the Court, my name is Zach Savage and I represent the appellant, PHT Holding, and I would like to reserve three minutes for rebuttal. This Court should reverse the summary judgment below for two central reasons. First, under Arizona law, this Court must consider the extrinsic evidence on the meaning of non-participating. And it must do so because there's nowhere in the policy where it expressly says that non-participating means only non-participation in SLD's gains. And the extrinsic evidence, including but not limited to the board memo, where SLD adopted the very interpretation that we're advocating for here, is dispositive. Second, even within the four corners of the policy that SLD wrote, the language comes nowhere near the level of clarity that's needed to support summary judgment for SLD. Instead, the language indicates, and as I believe SLD and the District Court both acknowledged below, the term non-participating is intended to take on a technical meaning. And where that's the case, under the United States versus Continental Oil case that we cite in our brief, summary judgment should have been denied because there was competing technical evidence on both sides. And so I'll start with the text of the policy, which simply starts by saying, this policy is non-participating. And again, with respect to the term in dispute, which is non-participating, I don't think there's even a dispute as to whether this is a technical term. Below, SLD conceded that it was a technical term, saying in its reply brief, the term non-participating is a familiar term of art in the insurance context. The District Court said, at least for purposes of this policy, that, I don't know if you'd call it a definition, I think you'd dispute that, but it makes a reference to surplus earnings. So why isn't that as close as we get to a definition of what non-participating means here? So we don't think, I think you're talking about the second part of the policy, the second appearance of the word non-participating. But again, the term in dispute is non-participating. And that second portion of the policy, where it says it does not participate in surplus earnings, I don't believe functions as an all-encompassing definition, as the District Court and SLD believed it did. And there's a number of textual indicators in the policy itself that indicate that, in fact, that second appearance of non-participating in the policy could simply be an illustration of the way in which the policy is non-participating and not an all-encompassing definition of the term. I would have thought it would say that, if that were true, it would say the policy does not participate in our surplus earnings or losses. That's what I'd expect, to see if the drafter of the contract was envisioning the position that you're taking. Well, the position that we're taking is that the term in dispute is non-participating, which is a technical term. And even the District Court, when it was talking about surplus earnings and what that meant, it referred back to the industry evidence on what the term non-participating itself means. It looked at the definition of the term from Couch. Well, counsel, are you saying that we're supposed to ignore the word surplus earnings or ignore dividends? Oh, I'm not saying the Court should ignore the word surplus earnings or dividends. And we believe that the term surplus earnings or dividends are simply, we agree, assuming that you believe that surplus earnings is only referring to SLDs gains. We believe that a component of the way that the policy is non-participating is that it doesn't share in surplus earnings. But we do not believe that that is the full extent of the definition. Could you clarify whether you think dividends and surplus earnings are the same thing or are they different? So we think that surplus earnings itself is an ambiguous term. And so if you accept that that second appearance of the word non-participating... Well, is dividends an ambiguous term? We don't believe that the term dividends is ambiguous. So how is surplus earnings different from dividends? So surplus earnings is not a well-accepted term, either as a lay term or even within the industry, the insurance industry. So we believe that surplus earnings could be understood to mean gains or losses. But the real term in question is non-participating, which is an accepted term in the insurance industry, as the District Court seemed to acknowledge. But the fundamental problem with the District Court's analysis and the most straightforward reason to reverse is that the District Court simply ignored the fact that there was a lot of extrinsic evidence on our side regarding the meaning of the word non-participating. Well, before you leave the terminology, when a policy provides for participation, in other words, a participation policy as opposed to a non-participation policy, doesn't that just mean that the policyholder receives dividends when they occur? When a policy is participating, it means that it participates in full in the insurance company's financial performance. And so that could mean that when the insurance company does well, it receives dividends or that those dividends that were promised could go up. But it also means that when the insurance company does poorly, that the insurance company could pass on losses to the policyholder. This policy is the opposite. It is a non-participating... Well, I want to make sure I understand that answer. So in a participation policy, if there are dividends, the policyholder shares in the dividends, correct? If there is a participating policy, the policyholder may receive dividends and those dividends may increase if the insurer does better than was expected. Right. That was my question. Correct. But another component of a participating policy is that the insurance company is able to also share its losses with the policyholder if it does poorly. This here is the opposite. This is a non-participating policy and it's a two-way street in which the insurance company neither shares with the policyholder the gains when the insurer does well, nor is it permitted to saddle the insurer with its losses in the event that it does poorly. The best you have is that it's silent on losses, right? I mean, it says nothing. If we interpret it as the... when it says, am not eligible for dividends or does not participate in their surplus earnings, and we limit that to just talking about surplus earnings and dividends, the policy then would be silent on losses. We don't believe the policy is silent on losses because we believe that the term non-participating itself is a technical industry term that means does not share in gains and losses. But aside from that... Well, I'm not looking at it as... I'm looking at it as what a purchaser of the... a reasonable purchaser of the insurance would understand from reading the policy. Yeah. So, Judge McHugh, I'll say two things in response to that. First of all, we cite in our briefs cases that talk about what a reasonable insurer would expect when purchasing a policy, just as a general matter, not looking at the particular terms of the policy. And we have cases that find, like the North American and the Lincoln National case that we cite in our briefs that suggest that this one-way interpretation, this one-way ratchet that SLD is positing in which it is permitted to saddle its insurers with losses but not share the gains is not what a reasonable policyholder would expect when they're buying a policy. But the other thing... I'll say actually two other points. Go ahead, if you have a question. So, first of all, the first appearance of the term on the first page of the policy says that the policy is non-participating and is not eligible for dividend. I'm sorry to interrupt, but your position is that non-participation is inherently ambiguous, as I understand it, and a reasonable purchaser of this policy would look at the terms here and it would be ambiguous. Any reasonable person would find it's ambiguous, I think, according to your position. And so the purchaser of this product would assume non-participation... I guess the purchaser could go either way, assume that the language says it only applies to earnings and not losses, or read in an omitted term, which would be losses. That's right, Judge Sienkiewicz. Our position is that it is at least ambiguous. And if the policy, if the meaning of the term non-participating is ambiguous, then summary judgment should have been denied. And the appropriate thing to do in that situation, once summary judgment has been denied... And that term is ambiguous, really, as a matter of law, unless specifically defined otherwise in a policy, like some of the other policies that do define non-participation. That's right. The policy could have set out a very clear definition of the word non-participating, and it could have said what SLD is positing that it says here. But we don't believe that the policy does that. The policy doesn't include non-participating in the definitional section. That's right, Judge Sienkiewicz. So there is a separate definition section in the policy, and the word non-participating does not appear in that definitional section. There are, I think, 20... Well, in other terms that don't appear, and the definitions appear also in the body of the policy, but they tend to say a definitive definition, like a segment is a block of death benefit coverage. There's nothing here in the policy like that with respect to non-participating, is there? That's exactly right, Judge McHugh. So our position is not simply that a policy cannot define a term somewhere other than in the definitional section, but there needs to be some language that makes it clear that what the policy is doing is actually defining the term in question. And so... Is your ambiguity argument separate from your technical meaning argument? They are related, Judge Matheson. The fact that this is a technical term and there is competing evidence on both sides renders the term ambiguous. So in a different world... It seems so that your technical meaning argument is that this word has a technical meaning that's not ambiguous. It just has a technical meaning. Well, our position is that the technical meaning is the one that SLD wrote in its Ford Memorandum, which is that non-participating means that the insurance company doesn't give the policyholder its gains and doesn't recoup past losses. But at a minimum, it's ambiguous. And the district court instead took only a couple of pieces of technical evidence, the ones that SLD favored, put it in the opinion and ignored all of the extrinsic evidence that was on the other side. And in that situation, the term is ambiguous. Summary judgment should be denied. And those questions should be reserved for a backwinder. Does the record show whether there were actual losses here by SecurityLive? Yes, absolutely. I see my time is about up. I'll answer the question. The record shows that there were losses. This is in our expert report by Howard Zale. And I can give you the but the record shows that literally what SLD did was take the losses that it suffered on these reinsurance treaties. Were these losses or just they didn't earn as much as they hoped to? No, these are actual losses that SLD suffered, that it recorded on its books, and then it literally plugged those losses into the model that came up with the COI increase that it imposed on policyholders. All right, thank you. Thank you. Mr. Johnson, you may proceed. May it please the court, Clark Johnson on behalf of Defendant Appley SecurityLive. Move your mic up a little bit. You're taller than the average person. As high as it goes there. There you go. Thanks. Again, Clark Johnson on behalf of Defendant Appley SecurityLive of Denver Insurance Company. As the panel's questions have already acknowledged, PHT's theory of breach here, which was never asserted in any pleading, requires the court to add words to the complaint. It's not just the words that Judge McHugh pointed out that the provision that states the policy does not participate in our surplus earnings or losses. PHT asks you to also understand the word losses to mean a specific cost or expense in a transaction associated with this policy, not earnings like profits in a given year. Those two layers of additional words are not supported under even Arizona law, which I think the parties acknowledge is more liberal in terms of consideration of ambiguous evidence. Well, under Arizona law, wouldn't the court have to look at the extrinsic evidence before making a determination as to ambiguity? Which is exactly what the district court did here. The district court looked at the purported extrinsic evidence, the board memo, and concluded that it would contradict the plain language of the contract and therefore rendered it inadmissible in consideration of the meaning of that provision. And can you point me to the plain language in the contract where it informs and ensured that they will be participating in the company's losses? Well, the critical point here, Your Honor, is that we're talking here about... Can you answer my question first? Yes. The cost of insurance provision, which is what's implicated by the cost of insurance increase, imposes only two limits on the company's decision to increase COI rates. Number one, there's a maximum rate that can be charged. And number two, mortality must be in consideration. So you're using that list and saying it's not inclusive, that there are other things that could be included. That's exactly what the district... So why can't we look at the... When it says the policy does not participate in our surplus earnings, look at that as saying that that's not inclusive either, that it might also... There might also be other things that the policyholder doesn't participate in. Well, the critical language in the COI provision is that the company will refer to certain factors. That is not, as the district court concluded in granting summary judgment on the only pled theory of liability here that the COI provision was breached, limit the consideration of other factors. And there's a vast amount of circuit case law to that very effect. Well, going back to my first question that never was answered, there is no language in this policy that expressly states you will not share in our losses or you will share in our losses. The policy is silent on the issue of losses. I agree with that. But the question here is whether the non-participation provision, which says the policy does not participate in our surplus earnings, could also mean that there's no participation in any losses. And again, that would require the addition of words, which is not acceptable, certainly under the four corner states or even under the Arizona law here. So, counsel, am I understanding correctly that the district court granted summary judgment to Security Life on the breach of contract claim based on the cost of insurance provision? That's correct. And that hasn't been appealed? Correct. How does the district court's ruling, given that it hasn't been appealed, how, well, is that relevant to the issue that we're looking at today? I think it is to this extent, Your Honor. The challenged conduct here is the COI increase. That's what plaintiffs complained about. In fact, if you go back and look at the complaint here, the complaint is there was a breach of the COI provision when these rates were increased. There was no reference to this, the COI increase being a breach of the non-participation provision. That claim was not raised until exactly one week before the close effect discovery in this case, as the wheels were falling off, the only pled theory in the complaint. And so, if you step back and look at what are plaintiffs really complaining about, it's the COI increase. And the COI provisions really govern the company's obligations in that regard. The non-participation provision really has no bearing on cost of insurance increases. To answer, I'm not quite sure I followed the answer to his question. How does it affect this appeal? Well, I think it should inform the court's consideration of what provisions of this contract really should apply to the challenged conduct. And again, as the district court ruled, the provision that governs cost of insurance increases was plainly not breached and there's been no appeal of that. I think the court should consider each of the provisions of the contract in context and ask itself how the non-participation provision could limit the company's rights in connection with increasing cost of insurance rates. Well, as I understand the argument, it is that the increase in the cost of insurance was based on losses incurred by the company. I think the experts said 97% of the cost of insurance was directly related to the company's losses. And so, as I understand the argument is, if non-participating means that we can't be charged with your losses, they're saying that the calculation of the cost of insurance was contrary to the policy. I think I'm understanding. I think I understand the exact same way I judge with you. But I think here's the critical point. We're looking at the language surplus earnings, right? And asking yourselves, could surplus earnings mean negative surplus earnings or negative financial results? There is no evidence that Security Life of Denver had negative earnings in 2011, 2012, 2013, or 2014. There were costs associated with certain transactions, but that is not the same thing as negative earnings. In fact, if you look at the complaint, one of the principal allegations is that Security Life was paying dividends to its parent company, its shareholder, during this negative earnings. It was a company. Well, would you make the same argument in response to PHT's contention about the technical meaning of non-participation? In other words, under a technical reading, could surplus earnings or dividends have both positive and negative value? No, I don't believe it could. I mean, look at the plain language of the words in the dictionary, surplus and earnings. Those are both... Well, but I've switched over not to the dictionary definition, but to their technical meaning argument based on, I guess, their expert. Well, as I understand it, Judge Matheson, the technical term is non-participation, not surplus earnings, but... And this gets to a question Judge McHugh asked my opposing counsel. Does it matter that this is not in the definition section or that it doesn't say non-participation means something? Well, the term isn't used elsewhere in the policy, which is why there's no reason to put it in the definition section, but I think the simple question for the court is in this general provision section of the policy, there's a heading that says non-participating, and then the next text is the policy does not participate in our surplus earnings. What is the relationship between the title and that sentence if it's not basically advice to the policyholder that there will be no sharing in profits or dividends paid, period? There's no promise that losses will not be taken into account when considering cost insurance rates? There's no promise that they won't be, but there's no warning that they will be. It says nothing about losses. There is no limit in the CLI provision? Assuming, of course, that surplus earnings doesn't include losses, which is, I think, the argument on the other side. That's one argument, and also that losses means particular costs or expenses associated with certain transactions as opposed to earnings that could yield payment of a dividend. So this was a question Judge Matheson asked earlier, and I'm not sure there was ever a good answer to it, but are surplus earnings necessarily dividends, or are dividends something different than surplus earnings? As I understand it, in participating policies, surplus earnings are the basis for which dividends are paid, so that there is a financial result that's more positive than expected, and then that is then shared through the payment of dividends. And here, again, this provision that supposedly is breached cannot possibly be read to mean we are not going to pay dividends for surplus earnings, nor will we impose costs due to losses. The language does not allow for that contortion. But it also doesn't allow for, and you, but you will be responsible for paying our losses, covering our losses. I mean, my problem with this says nothing about losses. Well, you know, I would refer your honor to the other non-participation provisions in other contracts that we've referred the court to that expressly say that the company will not share surplus earnings and will not recoup past losses. The fact that this contract... So what you mean is your purchaser of insurance somehow imputed with knowledge about how other policies in the industry are written? Well, you know, the negative implication canon, whether an insured, is it familiar with those canons, I don't think is the question. The exclusion of language that exists in other similar policies, I think, is a relevant consideration as you consider this. Was that extrinsic evidence? I don't think the fact that there are other contracts out there constitute extrinsic evidence. Aren't there non-participating contracts that are silent, that companies interpret to prohibit sharing and losses, and there are non-participating contracts that are more explicit? You know, it sounds to me that there's, you know, a couple different industry standards on what non-participation means. Doesn't that take us to the land of ambiguity? You know, I think the first question is what does the text require or permit? And again, as the trial court here concluded, this language unambiguously bars the suggestion that there's been a breach by the imposition of a cost associated with the reinsurance recapture. And I want to highlight... Should I go to the dictionary for non-participation? Is that where we should start? You may do that, but I think the key is surplus earnings, which again, and I think Judge McHugh recognized this in a question to my opposing counsel. The question is what does a consumer understand? And here's what the record lacks after six years of litigation. Evidence that any actual consumer shares PHT's meaning. And remember, PHT didn't buy this contract from Security Life of Denver. They bought it in the natural person, human beings who purchased this contract. There's zero evidence that they would buy into PHT's proposed meaning now. And so... Well, they would say the authors of the board memo accepted their interpretation. Yeah, they would say that, but the board memo does not address this language in this specific contract. It's a general statement as to 29 policies written, in fact, by multiple companies over a long period of time. And so the board memo statement, which by the way, the board memo goes on to say there's been no violation of any of these provisions. And so... Doesn't the board memo sweep in this insurance contract? It does not speak to this insurance contract. It speaks as a general matter to a number of different contracts issued by Security Life of Denver over time. Well, including this one. This is one of the 29 contracts. Okay. That is correct. Could I... I asked your opposing counsel this question. It's sort of a compare and contrast question, and it has to do with when the policy is a participation policy. As a general matter, does the policyholder share in dividends and surplus in a participation policy? That's generally accurate. What about losses? In a participating policy, the policyholder is akin to a shareholder in the company. And so the policyholder in a participating policy does, whether through added premium or otherwise, experience the losses with the company akin to the way a shareholder would. So it would be a lesser dividend or no dividend in those instances. I want to touch last on the issue of the disgorgement theory of damages, which was the sole theory of damages that Security Life, excuse me, that the Ph.D. raised at the trial court. Just to finish up on that last question, in a participating policy, could the company make a capital call on policyholders? I think it would depend on the terms of the policy at issue in those cases. So it's possible? I just couldn't say. I guess it's possible that that's... Do you know if some policies are written that way? I honestly, number one, I would say the record here doesn't have any information in that regard. And I can think of my Northwestern mutual policy doesn't allow for capital calls, I would say that. Okay. Thank you very much. Time has expired. Mr. Savage, you had some time left. Thank you, Your Honor. Just a few points briefly. I should lower this. So just to follow up on Judge Simcovich's question from the end. So the fact is that the policies did, in fact, suffer losses that were embedded in the COI increase model. And you can see that at appendix page 413, page 77 of our expert's report where he calculates, where he shows that these losses that SLD suffered were embedded in the COI increase. Stepping back on that... Let me interrupt for just a minute. But you did not appeal the district court's decision with respect to the cost of insurance, right? So there were claims that this same COI increase breached multiple provisions of the policy. One was the cost of insurance provision that we did not appeal. The other was the non-participating provision that this appeal is about. And so whether or not the COI increase breached a separate provision is irrelevant to the question of whether the COI increase breached this provision, which is the non-participating provision of the policy. And the evidence in the record that we've cited shows that, in fact, it did. Why is that so when ultimately you're challenging a cost of insurance increase? That's right. And there are lots of... That's really what the case is about, isn't it? Absolutely. And the district court said there was no breach of the cost of insurance provision. Well, it said there was no breach of that particular provision, but that is not the only provision that governs the manner in which the insurer can make its COI increases. But if they plugged in illegal losses into the cost of insurance determination, why doesn't that breach the contract? It does breach the contract. And it breaches the non-participating provision of the contract. And it also breaches the cost of insurance. Well, those provisions are... Because you're putting in an input that is prohibited under your theory. Well, we pressed that theory. We decided not to appeal it below, but the most straightforward reason that it did so is that it breached the non-participating provision, which the word non-participating is understood to mean that in COI increases, and this is what the board memo said, and this is what all the industry standard evidence that we've cited said, say that you cannot impose a COI increase that recoups past losses. That is what SLD did, and that is the claim that we're asserting here. So by not appealing the cost of insurance, I mean, what are you entitled to if we agree with you on non-participating, a declaratory judgment? I mean, you can't now challenge the cost of insurance. No. So our damages model is the amount of the increase that SLD imposed because the increase... Imposed through the cost of insurance. That's right. So it raised the cost of insurance on the policies. In doing so, that breached the non-participating provision, and so the remedy for the breach of that provision is to put the policyholders in the position they would have been in had that breach not occurred, which is a refund of the cost of insurance increase. I'm a little confused on why you didn't appeal the cost of insurance. Well, we appealed on this ground because we believe that this is the most straightforward basis for the recoupment of past losses being a violation of the policy. Anything else? Counselor, time's expired. We appreciate the arguments. Thank you, Your Honor. The case shall be submitted. We appealed on this ground because we believe that this is the most straightforward basis for the recoupment of past losses being a violation of the policy. Anything else? Counselor, time's expired. We appreciate the arguments. Thank you, Your Honor. The case shall be submitted.